THE STATE v. A. BAKER, J. THOMAS and G. JOHNSON.

A Court of Oyer and Terminer held in 1868 by virtue of the act of 1862; (Feb. 9,) and under a commission from Governor Holden to a Judge of the Superior Court, was competent to hear and determine cases of crime.

Where a Judge of the Superior Court holds a term, it will be taken, *prima facie* at least, that he was authorized so to do, and that it was regular.

A general verdict of guilty, upon an indictment containing several counts, will be supported, although these are *inconsistent* as regards their statement of the manner of killing.

A charge that—"if the acts deposed to by C. P. were the cause of the death, it was murder," *held* to be no trespass upon the province of the jury.

During a capital trial, one of the jury (then out of Court in charge of an officer for the purpose of eating dinner) was allowed to pass by or near a number of persons, and to eat his dinner a short distance from the other jurors, although he conversed with no one,—*held* to give no just cause of complaint to the prisoners.

(*Sparkman* v. *Daughtry*, 13 Ire. 168; *S.* v. *Ledford*, 6 Ire. 5; *S.* v. *Morrison*, 2 Ire. 9; *S* v. *Miller*, 7 Ire. 275; *S.* v. *McCandless*, 9 Ire. 375; *S.* v. *Williams*, 9. Ire. 140; *S.* v. *Hester*, 2 Jon. 83, cited and approved.)

MURDER, tried· before *Mitchell, J.,* at a Court of Oyer and Terminer for HALIFAX, held in July 1868.

The record set forth a commission from Governor Worth to Judge Mitchell, dated June 22, 1868, authorizing him to· hold the Court in question at such early time as he might appoint; also one from Governor Holden to the same, dated July 14, 1868, giving him like authority to· hold a Court on the 27th day of July 1868.

The indictment contained four counts, which charged the· homicide to have been committed (1) with a stick, (2) by casting to the ground, striking, kicking and beating, (3) by drowning, and (4) by some means unknown.

The prisoners and the deceased had been playing cards · during the night, the deceased being winner.   The prisoner Baker thereupon, became· angry, abusing the deceased, and insisting that he should return the money.   This was refused. Thereupon, as was testified by a witness named Cuba Panton,.

who was in a room adjoining, Baker renewed his abuse, and struck the deceased with some instrument that had a handle, and knocked him down. He fell backwards, his head striking upon a passage floor. Thereupon, a blow with the same or a similar weapon was given by each of the other prisoners. They then dragged him off groaning and begging for mercy. He was not seen again until some days afterwards, when his body was found in Roanoke river. When found, a wound, apparently made by a hammer, was discovered on the frontal bone; a physician pronounced it to be mortal, and the cause of the death. Other wounds not of themselves sufficient to produce death, were found upon the body.

The Court instructed the jury that if the acts deposed to by Cuba Panton were the cause of the death of the deceased, (Wade Ditcher,) it was murder by the prisoners. The prisoners excepted.

During the trial the jury were permitted, under the charge of an officer, to eat their dinner. One of them was allowed by the officer to pass by or near a number of persons, and to eat his dinner at a short distance from the others. It was not alleged or believed that he conversed with any one.

The term of the Court was stated in the case to have been held under an appointment as Judge of the Superior Court, and under the special commission by Governor Holden.

Verdict, Guilty; Rule for a new trial; Rule discharged; Judgment, and appeal.

*Conigland & Solomon*, for the prisoners.

1. The acts of 1862 and 1863 ceased to have effect upon the adoption of the present Constitution; and that Constitution does not authorize Courts of Oyer and Terminer.

2. The charge in regard to the evidence of Cuba Panton, *assumed* the " acts" to exist.

3. The charge violates the rule in the *State* v. *Scates*, 5 Ire. 420.

The judgment must be arrested, for the counts charge the

killing, in *inconsistent* ways, and the verdict being general,. there can be no judgment upon it. *Reg.* v. *O'Brien*, 2 Car. and Kir. 115; *Reg.* v. *Downing*, 2 *Ib.* 386.

They also cited Chitty, Cr. L. 1st, 258; 3d, 734; Hale. Pl.. Cr. 1st, 439; *S.* v. *Moses*, 2 Dev. 468.

*Attorney General, contra.*

READE, J. The statute provides that, for "good cause shown, the Governor shall issue commissions of Oyer and Terminer to the Judges of the Superior Courts of law, which Courts of Oyer and Terminer shall have jurisdiction to indict, try," &c.,—Act of 1862, February 9.

"The laws of North Carolina, not repugnant to this Constitution, or to the Constitution of the United States, shall be in force until lawfully altered"—State Constitution, Art. 4, s. 24.

Under the Constitution, the Courts are "Supreme Courts,. Superior Courts, Courts of Justice of the Peace, and Special Courts"—Art. 4, s. 4.

A Court of Oyer and Terminer. held by a Judge of the· Superior Court, as provided for in the act of 1862, *supra*, is a Superior Court, and is not repugnant to the Constitution, but is in consonance with it. The act of 1862 is, therefore, in force.

It appears from the record in this case, that two commissions issued to Judge Mitchell to hold the Court, the action of· which we are reviewing—one from Governor Worth, before the late provisional government expired, and one from Governor Holden, after the present permanent government came· in. And the statement of the case, which stands in the place of the prisoners' exceptions, sets forth that Judge Mitchell held the Court "under his appointment as Judge of the Superior Court, and the special commission of Governor Holden." We think, therefore, that it appears affirmatively that the Court was properly constituted, and had jurisdiction. But it was not necessary that it should appear on the record affirmatively;.

for, when a Court is held by a Superior Court Judge,—and Judge Mitchell is such a Judge,—it is not necessary that the record should set out the authority by which he held it, because, *prima facie* at least, it is to be taken that he is authorized to hold it, and that it is in all things regular. *Sparkman* v. *Daughtry*, 13 Ire. 168; *State* v. *Ledford*, 6 Ire. 5.

The indictment has several counts, one charging the killing by blows with weapons, another, by drowning, and a third, by means to the jurors unknown. And there was a general verdict of guilty. The only evidence offered was upon the first count; and there was evidence of the blows, and the physician was of the opinion that the death was caused by the blows. His Honor's charge was confined to the first count,—telling the jury that if they believed that the blows were the cause of the death, it was murder.

It was in evidence that the dead body was found in the river some days after the blows were given, but this was not relied on as evidence of his being drowned, and there was no charge upon, or consideration of the count for drowning.

The prisoner insists that as the killing is charged in different and inconsistent ways, and the verdict is general, the verdict is inconsistent, and no judgment can be rendered. The authority principally relied on for this position, is *Regina* v. *O'Brien*, 61 Eng. C. L. R. 115. In that case one count charged the death to be by a *blow with a stick* held in the hand, and another count, by a *stone cast and thrown*. The verdict was general. It was objected that no judgment could be rendered, because the finding of the jury left it uncertain, whether the death was caused by the blow with a stick held in the hand, or by the blow with a stone cast or thrown. The case was reserved for the fifteen Judges, and was well considered. The conviction was held to be right, and judgment was pronounced. The *decision*, therefore, does not sustain the position, but is not precisely against it, because it was put upon the ground that the different modes charged were substantially the same, both being by blows. Yet it must be admitted that much fell from the Judges *arguendo*, to favor the position. The physi-

cian, who made the *post mortem* examination in that case, said there were two fractures of the skull, both might have been caused by the stick; but it was more probable that one was -caused by the stone, and he could not say which was the mortal blow, as each, without the other, would have been mortal. It is to be observed that in that case there was evidence upon both counts, which differs from our case, in which there was evidence only upon one count. It seems, however, to be settled both in England and this country, that where there is a general verdict on an indictment containing several counts, some good and some bad, judgment may pass upon the counts that are good, on the presumption that to them the verdict attached. And so, where one of the two counts is good, and one bad, and the prisoner is found guilty, and sentenced generally, the presumption of law is that the court awarded sentence on the good count. Wharton's Crim. Law, Sec. 3047.

And it is said that every cautious pleader will insert as many counts as necessary to provide for every possible contingency in the evidence. To a person unskilled in legal proceedings it may seem strange that several modes of death, inconsistent with each other, should be stated in the same indictment; but it is often necessary, and the reason for it when explained will be obvious. The indictment is but the charge or accusation made by the grand jury, with as much certainty as the evidence before them will warrant. They may be satisfied that the murder was committed, but doubtful as to the manner; but in order to meet the evidence as it may developed on the trial, they are allowed to set out the mode in different counts, and then, if any one of them is proved, it is sufficient to support the indictment.

Take the case of a murder at sea—a man is struck down, lies on the deck for some time insensible, and in that condition is thrown overboard. The evidence proves the homicide certainly, either by the blows or by the drowning, but leaves it uncertain by which. That would be a fit case for several counts; charging the death, by a blow; and the death, by drowning; and perhaps a third, charging it, by the joint results of

both. A general verdict would be sustained, and a general judgment upon the verdict, and this from the very necessity of the case. Wharton's Crim. Law, Sec. 424.

The killing is the substance, the mode is the form: and while it is important, that the prisoner should be specifically informed of the charge against him, so that he may make his defence, yet he cannot complain that he is informed that, if he did not do it in one way, he did it in another—both ways being stated; and it is not to be tolerated, that *the crime* is to go unpunished, because the precise manner of committing it is in doubt.

In our own Court it has been decided, that when there are several counts, some good and some bad, and a general verdict, judgment may pass upon the good, rejecting the bad as surplusage. *State* v. *Morrison*, 2 Ire. 9; *State* v. *Miller*, 7 Ire. 275; *State* v. *McCanless*, 9 Ire. 475.

Where there are several counts, and evidence was offered with reference to one only, the verdict though general, will be presumed to have been given on that alone, *State* v. *Long*, 7 Jon. 24. Where there are several counts, charging the same crime to have been done in different ways, the jury are not bound to distinguish in which way it was done, but the verdict may be general. *State* v. *Williams*, 9 Ire. 140. We see no reason for arresting the judgment.

The Judge charged the jury that, if the acts deposed to by Cuba Panton (who testified as to the blows), were the cause of the death, it was murder. This charge was excepted to upon the ground that it assumed the acts to be true, and left only their effect to the jury; whereas, the prisoner denied that the acts ever occurred, and insisted that the existence of the acts ought to have been left to the jury. But we cannot understand how certain acts caused death, unless the acts existed. When, therefore, his Honor told the jury that, if they believed that certain acts were the cause of the death, it was murder, it was the same as if he had said " If you believe the acts were performed, and that they produced death, it is murder ;" because it is impossible that the jury would believe that the

acts caused the death, without first believing that the acts existed.

During the trial, the jury were put in possession of an officer, to be kept together, with permission to eat their dinner. One of the jurors was allowed " to pass by or near a number of persons, and to eat his dinner a short distance from the other jurors, but he conversed with no one. " There is nothing in this of which the prisoner has any right to complain. In *State* v. *Hester*, 2 Jon. 83, two jurors left the rest for fifteen or twenty minutes, but did not speak to any one, and it was held not to vitiate the verdict. Let this be certified, &c.

PER CURIAM.                     There is no error.