THE STATE v. W. B. PARKER and ALFRED GILMER.

An indictment for murder which charges that the prisoners on the deceased " did make an assault and in some way and manner, and by some means, instruments, and weapons to the jurors unknown, did then and there feloniously, wilfully, and of their malice aforethought deprive him the said A. of his life so that the said A. did then and there instantly die," &c., is sufficient, although the evidence presents different ways and means by which the deceased might have been killed.

It is not competent on the cross-examination of a witness to ask him if he made the same statement before the grand jury as he now makes, when the counsel state that their object in asking such question is not to impeach the credibility of the witness. *State* v. *Williams*, 7 Jones 446; *State* v. *Williams*, 9 Ire. 140; *State* v. *Baker*, 63 N. C. 276, cited and approved.

The prisoners were indicted for the murder of one Thomas Price, (Colored) tried before *Tourgee*, *J.*, at Spring Term, 1871, of GUILFORD Superior Court.

The indictment contained but one count, and in describing the manner and means by which the deceased was killed, says, the prisoners " on the body of Thomas Price, did make an assault and in some way and manner and by some means, instruments, and weapons to the jurors unknown, did then and there feloniously," &c., &c. The indictment concludes, " and so the jurors aforesaid on their oath aforesaid do say that the said William B. Parker and Alfred Gilmer, him the said Thomas Price in the manner, and by the means aforesaid to the jurors aforesaid unknown, then and there feloniously, wilfully, and of their malice aforesaid did kill and murder, against the peace and dignity of the State."

W. B. Bogart, Coroner of the County, testified that deceased was found on Monday morning the fifth of December, 1870, dead on the premises of the prisoner, Parker, and about a quarter of a mile from the house of said prisoner, with the flesh of one leg entirely gone, the foot had been separated from the

leg, small bone in the lower part of leg broken, on the back and sides of the body were found many bruises, and as the witness testified " at least a dozen bruises between the shoulders and down the small of the back, and were of the size of silver half dollars, oval and round."

The witness further testified that the place where the body was found was a sandy surface covered with dead grass, that he found blood on rails lying against a fence in the direction of the prisoner Parker's house ; the blood seemed fresh, and its appearance indicated that it had been there but a short time ; that he followed a path in the direction of Parker's house to the body of deceased, and when within forty or fifty yards from the prisoner Parker's house, he found a spot where there seemed to have been marks of quite a struggle and considerable blood on the ground, three or four different sized tracks were at this place seen, these indications covered a space of eight or ten feet square, at this place found some drops of blood which indicated a fresh appearance.

The witness further testified that the bruises, showed as if they might have been caused by a rock, or punches by a stick. Bruises were also found on the breast. He also stated that the bruises might have been caused by the biting of dogs.

Another witness testified that he met the prisoners on Saturday night of the fourth of December, 1870, both of whom had sticks, and the prisoner, Parker, said " they intended to find out who had burned his corn, and were in search of the party, that they intended to kill some one, and kill till they were taken up."

Another witness testified that during the winter of 1870, he lived in 250 yards of Parker's house, that on Saturday night December 4th, Parker came to the house of witness and asked witness to go up and see the thief who burnt his corn, that he then had old Tom Price under arrest up there by the women, that if witness did not go then, that he might not see him, for he (Parker) might kill him or make his dogs tear him up, that.

Parker left, but returned in a few minutes, and begged witness to go and hear the old man tell his tale, for he did not think he would ever turn him loose. Parker had with him a half dozen dogs, a gun, and an old knife. After he, (Parker) left, witness saw the prisoner Gilmer, join Parker, some twenty or thirty yards from the house of witness. This was about midnight.

Witness further testiffed, that sometime after Parker left his house, he heard the dogs fighting, as he supposed, in Parker's yard; a few minutes after this, he heard Parker say, " Oh, God damn you, I told you they would kill you." Shortly thereafter, witness recognized the voice of the deceased cry out three times, " Oh, Lordy."

There were several other witnesses, who testified as to the condition of the body of the deceased when found.

When the witness Bogart was being cross-examined, the prisoners' counsel proposed to ask him if he made the same statement before the Grand Jury, as he made then.

The Court inquired if the defence intended to impeach the witness ; to which the prisoners' counsel stated that such was not their object.

His Honor held that the question was not competent in any other view. Prisoners excepted.

The prisoners' counsel offered no evidence, but asked his Honor to charge :

1. That the evidence of bruises upon the body of the deceased, taken in connection with the subsequent testimony in the case, establish, or tend to establish that the bruises upon the body of the deceased were caused by dogs, before his death, and consequently there is a fatal variance between the *allegata et probata.*

2. That the " way, and manner, and means," of the death of the deceased, are shown by the evidence, and therefore there is a variance between the allegations and proof.

3. That the jury, if there is any doubt upon the question as to how the bruises were made, should give prisoners the benefit of the doubt.

4. That if the jury are satisfied from the testimony, that the ·deceased came to his death by reason of the bruises upon his body, caused either by dogs, stones, sticks, or any blunt instrument, or weapon, there is a fatal variance between the indictment and proof.

There were also other instructions prayed for not necessary to be stated.

His Honor declined to charge as requested in each and every particular, to which the prisoners' counsel excepted.

Verdict guilty. Rule, &c., Judgment and appeal.

*Attorney General* and *Scott & Scott*, for the State.
*Mendenhall* and *Ball & Keogh*, for the prisoners.

RODMAN, J. This was an indictment against the prisoners for the murder of Thomas Price.

It contained but a single count, which was in the usual form, except that it 'charged that the prisoners, on the said Price, " did make an assault, and in some way and manner, and by some means, instruments and weapons, to the jurors unknown, did then and there, feloniously, wilfully, and of their malice aforethought, deprive him, the said Thomas Price, of life, so that the said Thomas Price did then and there instantly die," &c. In the course of the trial, the prisoners proposed to ask .of the witnesses examined on the part of the State to prove the homicide, whether the testimony they had given before the Grand Jury, was the same with that they gave to the jury on the trial then in progress. In reply to a question of the Judge, the counsel for the prisoners said, it was not his purpose to impeach the witnesses, by showing that they had testified differently before the Grand Jury. Whereupon, his Honor refused to allow the question to be put. After a verdict against the

prisioners, they moved in arrest of judgment, which was over-ruled and they appealed.

The counsel for the prisoners in this Court, in an able argument, has endeavored to maintain, (as we understand him) the following propositions:

1. Assuming it to be known to a Grand Jury, that a homicide was committed in one of a limited number of ways, but not to be known in which one of those ways in particular, the rules of the common law require the indictment to contain separate counts, severally charging the crime to have been committed in one of those ways; and if the indictment, contain in addition to these, a count charging the crime by means unknown, (as it did in Webster's case) that count is bad and will not support a conviction.

2, Assuming as above, an indictment consisting of a single count only, charging the homicide by means unknown is bad.

3. Upon a trial on an indictment, consisting of such count alone, a prisoner may prove that the means were, or by reasonable inference, might have been known to the Grand Jury, and therefore the evidence ought to have been received.

As to the form of the indictment, the learned counsel admitted, that there were two cases of some celebrity, which might he cited against him. *Commonwealth* v. *Webster* 5 Cushing 295, and *State* v. *Williams*, 7 Jones 446. He contested the principle on which these cases were decided, and also endeavored to distinguish them from the present.

Both the decisions referred to, are entitled to great respect, from the character of the Judges who made them, and one of them, at least, must be regarded as an authority in this State. Nevertheless, as they are comparatively recent, and stand alone as far as we know, as decisions on the precise points in question, and have been seriously questioned by the learned counsel, we accept his invitation to consider the question independently of them.

The law requires every indictment to set forth with reason-

able certainty, the nature and circumstances of the crime. The reasons for this rule, applicable to the present question, are:

1. That the accused may know with what he is charged, so as to be prepared with his defence.

2. That in case of a second indictment, he may be able to plead his former acquittal or conviction.

The limits of the rule are to be measured by the reasons for it, and it will never be stretched to defeat the ends of justice. Ordinarily, an indictment for an injury to property, must describe the property, both by its own name, and the name of its owner; as in arson, burglary or larceny. Yet in these cases, if the name of the owner be unknown, it will suffice to say so. So on an injury to the person, ordinarily it is necessary to name the person injured; but if his name is unknown, it will suffice to say so. 1 Bish., Cr. Pro. 5297, where many cases are referred to. This was settled law and common practice long before the case of Webster, which has been called a novelty. But it must be admitted that for every purpose for which certainty of description is required, it is more important in reference to the description of the person whose goods, or body, may have been the subject of the crime, than any description of the means of killing in an indictment for homicide can be. Certainty in the description of the crime, must be more important than in the means of effecting it, which indeed in most cases, it is not necessary to state at all. Probably one accused of larceny might prove by the alleged owner, that he had lost no such goods: while if the name be omitted, he loses that means of defence. To one charged with the murder of A., he may prove that A. is alive, when he could not prove the same of a person described as unknown. Also it is obvious that one acquitted, or convicted of stealing certain goods, the property of A., and indicted a second time for the same offence, may with much more facility establish the identity of the second charge with the first, than he could if the name of the owner had been stated as unknown.

If certainty may thus, for sufficient reason, be dispensed

with in the more important circumstances : *a fortiori*, it may in the less important.

It is easy to see that under a contrary doctrine, which required the means by which a crime was committed, to be stated with certainty, when they could only be conjectured, a conscientious jury might often fail to agree as to what means were the most probable, and thus the guilty would escape, upon a doubt as to a matter not essential to his guilt.

To dispense with certainty where it is unattainable, can rarely if ever embarrass a just defence, while to expect it, may defeat the ends of the law.

We think also there can be no doubt, that a prisoner charged the second time with the murder of an individual by any certain means whatever, could avail himself of a former acquittal upon a charge of the murder of the same individual by means unknown. Such a form of indictment would thus in that respect be more advantageous to the prisoner, than one that stated certain means, *e. g.* by shooting, for he may be again tried upon a charge of murdering by other and different means, *e. g.* by poisoning.

Both on principle and authority, a count in the form here used is sufficient, and will support a conviction.

Having reached this conclusion, we can see no necessity for the use of other, and additional counts, stating with certainty, the several different means which may be supposed; and no reason except caution on the part of the pleader, and a desire to avoid the possibility of a variance between the charge, and the proof. For this reason no doubt the additional counts were inserted in Webster's case. It is taken to be settled law, that if an indictment charges in different counts, that the crime was committed by several different means, if the jury believe it' was committed by either of those means, they are not obliged to find by which in particular, but may find a general verdict of guilty on all the counts, notwithstanding the means charged in the several counts are inconsistent with each other. *State*

v. *Williams*, 9 Iredell, 140, *State* v. *Baker*, 63 N. C. 276. To the same effect is a very recent case. *Carr* v. *Desmarteau*, 16 Gray, 1 (Mass.)

Now if a jury may convict by a general verdict, which in effect says the crime was committed in one of several ways, but the particular one is unknown, of what advantage is it to a prisoner to have the several ways which may be conjectured as possible, separately set forth, rather than have them all combined, with no greater certainty in a single count "by means unknown?" That charge corresponds with the verdict, and the several counts substantially amount but to that; so it follows that alone should suffice.

Then as to the right of the prisoners to the evidence which was rejected. How it might have been if they had proposed that there was evidence before the grand jury different from that before the *petit* jury, and showing clearly how the homicide was effected, we are not called on to say. It is conceded for the sake of the argument that they would have been entitled to it.

But the counsel for the prisoners did not suggest, that there was before the grand jury any evidence different from that before the *petit* jury. So the question is, whether the evidence given upon the trial proved the homicide to have been committed by any certain means, and therefore reasonably tended to prove that it was committed by such means, to the exclusion of all others. If the evidence when admitted, would not reasonably tend to support the allegation that the grand jury knew the means of the homicide, it was incompetent and properly rejected. Herein, the counsel for the prisoners attempt to distinguish this case from that of Williams in 7 Jones, 446, as in that case no one way of killing was more probable than another. The difference between the cases in that respect is not so great as to be material. The most that can be said of the evidence in this case is, that it proved that probably the homicide was accomplished in one of four several ways, viz

1st, by shooting; 2nd, by worrying by dogs; 3rd, by bruises made by sticks, stones, or other objects; 4th, by the combined effect of all these means.

Among these different means we can only conjecture which was the real one, while it is certainly possible, consistently with the evidence, that the real means were different from any of those supposed.

We think therefore the evidence offered did not tend to prove the allegation, and it was properly rejected.

There is no error.

PER CURIAM.                                    Judgment affirmed.