### THE STATE v. ROTHSCHILD, *Appellant.*

**Criminal Law**: EVIDENCE: PRACTICE. On the trial of a criminal case a witness for the prosecution testified that he had been induced to leave the State, and had received money for that purpose. The evidence failed to connect the defendant with the transaction. But the judge and the prosecuting attorney instituted an inquiry for the purpose of showing by the witness that the parties implicated were certain officers of the law. The defendant having interposed frequent objections to the prosecution of this inquiry, the judge remarked in the presence of the jury: "I am asking for this testimony. This case seems to have been born in sin and brought forth in iniquity. That is the reason I asked those questions. If the officers of this court, and of this city, of these United States, are to get before the grand jury evidence without preferring preliminary charges in the preliminary courts, and then buy off witnesses without any preliminary examination, I will see that they are brought to justice, and that, too, speedily, without any preliminary charges. If the defendant is not connected with it, it can be withdrawn from the jury by instruction." But the evidence was not so withdrawn; *Held*, that the conduct of the court was error, requiring the reversal of the judgment, and would have been error even if the evidence had been withdrawn.

*Appeal from St. Louis Court of Appeals.*

*Joseph G. Lodge* with *Chas. P. Johnson* and *C. C. Simmons* for appellant.

*J. L. Smith*, Attorney-General, for the State.

SHERWOOD, C. J.—Defendant was indicted for the larceny of some United States bonds ; on trial had, was convicted, which conviction was affirmed in the St. Louis court of appeals, and he now appeals here.

Counsel for defendant have filed an elaborate brief, in which they object to many of the rulings of the criminal court. We think it unnecessary to advert to many of the objections thus urged, because we think that the case was, with some exceptions to be presently noted, very well tried, and as to evidence of defendant's guilt, there was certainly enough to go to the jury for the purpose of letting them say whether the defendant had formed a larcenous intent when he picked up the bonds from the floor where they had fallen. And such unlawful intent could be legitimately inferred from the subsequent conduct of defendant in relation to the bonds ; conduct which it would be somewhat difficult to explain, save upon the theory of defendant's guilty intent formed at the outset of the transaction. In this view of the case, we need not rely on the testimony of Samuels, whose testimony, he being an accomplice, should be received with appropriate caution ; 1 Whart. Ev., § 414. 1 Greenl. Ev., § 380; *State v. Jones*, 64 Mo. 391; but may look alone to the intrinsic improbabilities of defendant's own statement. Taking only that statement as our guide, it is hard to divest the mind of the conviction that defendant's zealous solicitude and care for the safe keeping of the bonds, when he first obtained possession of them, was singularly at variance with his gross carelessness in exposing them to open view in his wardrobe, in his rooms, to which a negro boy had daily access, and which a gambler, by defendant's permission, occupied. Nor did defendant's conduct comport well with honest in-

tention, in that he did not resort to the usual modes to discover the owner if unacquainted with him, nor to deliver the bonds to him if he was acquainted with him, as seems to have been the case. We have thought proper to allude to the evidence in this general way, because it is claimed that the weight of evidence was decidedly in favor of defendant's innocence. We do not think so.

We pass now to the consideration of those matters which must result in a reversal of the judgment. It appeared from the testimony of Samuels, that during the pendency of the prosecution, he had been induced to leave the State, and that money was paid to him by one Looney for that purpose; and the endeavor was made by the State to connect the defendant therewith. In this endeavor the witness was allowed to state that he did not know from whom the money came; that he "*expected*" the money came from Rothschild. He was then asked if he had ever seen any letter that was written by Rothschild, when he replied: Not by Jimmy Rothschild, but from his brother. This question and answer were objected to, but without success. The witness was then asked: Do you know of any other witness that was *tampered* with? Upon this question being objected to as an assumption, the question was changed to this form: Do you know of the defendant's tampering with any witnesses? When witness answered, I don't. Similar replies were made as to whether the letter referred to was written by defendant, and as to whether witness knew the person to whom it was addressed; and as to whether witness knew of any letters having been written by defendant. Notwithstanding the failure to connect the defendant with furnishing the money which enabled the witness to get away, the prosecuting attorney was allowed, against the objection of defendant's counsel, to ply the witness with questions, and to receive answers thereto, as to the money received by him, being sent to Frank Conway, in the absence of witness, and as to whether from witness' own knowledge, the person who paid him

the money and *tampered* with him, came from defendant? To this last question an answer was returned in the negative. The court then took the witness in hand, and although continual objections were made by defendant's counsel, proceeded to show by the witness that Looney, Reinstaedler and Egan had induced him to leave the city, and had sent for him to come back, that " it would be all right." After these questions were asked and answers elicited, the prosecuting attorney repeated his question respecting Officers Egan and Looney eloigning the witness, and objection again being made and overruled, the court remarked : " I am asking for this testimony. This case seems to have been born in sin and brought forth in iniquity. That is the reason I asked those questions. If the officers of this court, and of this city, of these United States, are to get before the grand jury evidence without preferring preliminary charges in the preliminary. courts, and then buy off witnesses without any preliminary examination, I will see that they are brought to justice, and that, too, speedily, without any preliminary charges. If the defendant is not connected with it, it can be withdrawn. from the jury by instruction."

But the evidence was not withdrawn from the jury by instruction as promised; it, therefore, went to them, and remained with them, under the direct sanction of the court. The jury, under such circumstances, would very naturally infer that defendant was in some way concerned, through the agency of others, in getting the witness out of the way, so as not to testify against him. It will not do to say that the testimony, being irrelevant, did defendant no harm, since the court had sanctioned its relevance by admitting it ; by promising to withdraw it by instruction, and by failing to do so. The effect of the irrelevant testimony was thus just as damaging, to all intents and purposes, as if it had, in truth and fact, connected defendant with the alleged attempt to tamper with and remove the witness from the State. If the minds of the jury were

then nicely balanced; were wavering between the innocence and guilt of defendant, this objectionable testimony stamped, as it was, with reiterated judicial approbation, was sufficient to turn the scale in favor of his conviction. *State v. Jaeger*, 66 Mo. 173. And the attention of the court was pointedly called to the error thus committed in the motion for new trial. But even had the court performed the promise made, and given an instruction withdrawing the objectionable evidence from the jury, the error of admitting it would not thereby have been cured. As was said in a similar case: " It had poisoned their minds, and its effects could not be erased from their memories." *State v. Daubert*, 42 Mo. 242; *State v. Mix*, 15 Mo. 153; *State v. Wolff*, 15 Mo. 168; *State v. Marshall*, 36 Mo. 400.

As the cause must be re-tried, we have deemed it unnecessary to review the alleged errors in greater detail. Judgment reversed and cause remanded. All concur.

REVERSED.