The State v. Blan.

THE STATE v. BLAN, *Appellant.*

1. **Indictment for Murder**: SEVERAL WEAPONS: SEVERAL DEFENDANTS. It is no objection to an indictment for murder, that it charges the assault to have been made with several different weapons, nor, where it is against two persons, that the acts of each are not separately stated.

2. ——— : ESSENTIAL ALLEGATIONS : JEOFAILS. An indictment for murder need not describe the wounds inflicted; but it should allege an assault, and the nature thereof, a mortal wounding of the deceased and that he died of such wounds within a year and a day. It is not sufficient to allege that defendant " did kill and murder the deceased by striking, hitting and mortally wounding him with sticks and clubs; " or that defendant "did shoot, kill and murder the deceased with loaded guns ; " or that defendant " assaulted the deceased with sticks, clubs and loaded guns, and did kill and murder him, by striking him with clubs and shooting him with loaded guns." Wag. Stat., Sec. 27, p. 1090, does not cure such defects.

3. . **General Verdict**: ONE GOOD COUNT. The rule is settled that where there are several counts charging the same offense, one good count will sustain a general verdict of guilty.

4. **The Accused can Waive Objections to Evidence** :· PRACTICE IN SUPREME COURT. A defendant in a criminal case can not object

| 69 | 317 |
| 31a | 302 |
| 69 | 317 |
| 111 | 587 |
| 69 | 317 |
| ,126 | 529 |
| 126 | 571 |
| 69 | 317 |
| 162 | 679 |

to evidence for the first time when the case has reached the appellate court. His objections are waived unless made at the trial. The rule in *State v. Davis*, 66 Mo. 684, concerning the incapacity of a prisoner to waive his legal rights relates only to proceedings prescribed by statute for his protection.

*Appeal from St. Louis Court of Appeals.*

*R. A. Buckner* for appellant.

*J. L. Smith*, Attorney-General, for the State.

HOUGH, J.—At the September term, 1878, of the St. Charles circuit court, John Blan and Joseph Blan were jointly indicted for murder in the first degree, in killing one Elijah Warren. Joseph Blan was acquitted. John Blan was convicted of murder in the first degree, and sentenced to be hanged. The judgment of the circuit court was affirmed by the court of appeals, and the defendant has appealed to this court.

The indictment contained five counts. The first count charged that John Blan and Joseph Blan, at, &c., "with sticks, clubs, loaded guns and other deadly weapons, which they, the said John Blan and Joseph Blan, in their hands then and there had and held, him, the said Elijah Warren in and upon the head and face of him, the said Elijah Warren, then and there feloniously, willfully, deliberately, premeditatedly, on purpose and of their malice aforethought, did strike, cut, hit and shoot, giving unto him, the said Elijah Warren, then and there, with the said sticks, clubs and guns, and other deadly weapons, in and upon the head and in and upon the face of him, the said Elijah Warren, several mortal wounds of the length of two inches each, and of the depth of six inches each, of which said mortal wounds the said Elijah Warren then and there instantly died. And so the grand jurors aforesaid, upon their oaths aforesaid, do say that the said John Blan and the said Joseph Blan, in the manner and form aforesaid, him, the said Elijah Warren, feloniously, will-

fully, deliberately, premeditatedly, on purpose and of their malice aforethought, did kill and murder, against the peace and dignity of the State."

The second count charged that the defendants did kill and murder the deceased by striking, hitting and mortally wounding him with sticks and clubs. This count contained no express averment that Warren died of the wounds so inflicted, nor were the wounds described. The third count charged that the defendants did shoot, kill and murder the deceased with loaded guns, but contained no description of the wounds inflicted, and no express averment that the deceased died therefrom. The fourth count charged that the defendants assaulted the deceased with sticks, clubs and loaded guns, and did kill and murder him by striking him with clubs and shooting him with guns. This count, like the second and third, contained no description of the wounds, and no express averment that the deceased died therefrom. The fifth count contained no description of the wounds inflicted, but in other respects is substantially the same as the first.

The first count is objected to as being vague and uncertain as to the manner of the assault, and as being faulty

1. INDICTMENT FOR MURDER : several weapons : several defendants.

in not separately stating the individual acts of each of the defendants. There is no force in these objections. It is well settled in this State, and held elsewhere, that an assault may be charged to have been made with several different kinds of weapons. *State v. York*, 22 Mo. 462; *State v. McDonald*, 67 Mo. 13; *State v. Painter*, 67 Mo. 85; *Commonwealth v. Macloon*, 101 Mass. 24; *State v. McClintock*, 1 G. Greene 392; *Vide, State v. Baker*, 63 N. C. 276.

In an indictment for murder, if two be charged as principals, one as the principal perpetrator and the other as aiding and abetting, it is not material which of them be charged as principal in the first degree, as having given the mortal blow. 1 Whart. Crim. Law, § 129. If, therefore, an indictment that A gave the blow and B was pres-

ent and abetting, is sustained by evidence that B gave the blow and A was present and abetting, it is wholly immaterial whether it is correctly stated in the indictment that either or both did it. In the *State v. Dalton*, 27 Mo. 14, the indictment charged that John Dalton and Michael Gaughy feloniously and willfully made an assault upon one Charles Hanfeneister, "with a certain knife of the length of six inches and of the breadth of two inches, which they, the said John Dalton and Michael Gaughy, then and there in their right hand had and held, with the intent," &c., and the indictment was held legally sufficient to sustain a conviction. We are of opinion, therefore, that the objections to the first count are untenable.

The second, third and fourth counts are objected to because they contain no allegation that the deceased died

2. ——: essential of the wounds charged to have been inflict-
allegations : j e o -
fails. ed by the defendant, and do not describe said wounds.

In the case of *Alexander v. The State*, 3 Heiskell 475, an indictment stating time and place and charging that the defendants assaulted and "then and there unlawfully, deliberately, premeditatedly, feloniously, and of their malice aforethought did kill and murder " the deceased, was held to be sufficient under the provisions of the code of Tennessee relating to indictments. In *Cordell v. The State*, 22 Ind. 1, the indictment charged that defendant did kill and murder the deceased by cutting, stabbing and mortally wounding him, but omitted the averment that the deceased died of the wounds so inflicted ; the court said : " We think the indictment sufficient under the code. · It shows the death of the assaulted individual. The word ' murdered,' *ex vi termini*, imports death." In Pennsylvania it is declared by statute that is shall not be necessary to set forth the manner in which, or the means by which, the death of the deceased was caused, but that it shall be sufficient to charge that the defendant did feloniously, willfully, and of his.

malice aforethought kill and murder the deceased.. Rev. Act, 1860, p. 435.

Our statute provides that no indictment shall be deemed invalid, nor the judgment thereon arrested "for want of the averment of any matter not necessary to be proved; nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." Wag. Stat. 1090, § 27. The section in which the foregoing provision occurs enumerates various trivial and formal defects and concludes with the clause quoted. In the case of the *State v. Pemberton*, 30 Mo. 376, this court in construing this section, held that the concluding clause should be limited in its application, to imperfections of the class or character previously enumerated. The court said: "If the design of our legislature had been to change the entire system of criminal pleading, they would undoubtedly have supplied a substitute for the one abolished. They have done so in civil proceedings, but in criminal proceedings changes, when made, have been specific. The ancient forms of proceeding have been retained, with specific modifications, and it is only from the clause that we are now called upon to construe that any inference can be drawn of a design on the part of the legislature to abolish the entire system of criminal pleading. To give so liberal and latitudinous a construction to this clause, would undoubtedly destroy many if not all of the forms which have been hitherto observed," and the court declined so to construe the statute.

It is indispensably necessary, says Mr. Wharton, to state that the death ensued in consequence of the act of the prisoner. Whart. Crim. Law, § 285; *State v. Wimberly*, 3 McCord 190; and it is clearly inadmissible to allege simply a legal conclusion. It has been decided that it is no longer necessary in this State to describe the wound, or to state on what particular part of the body the wound was inflicted. *State v. Edmundson*, 64 Mo. 398. But it is necessary, under our statute, to allege the substantive facts

21—69

necessary to be proved.    It is necessary, therefore, in a case like the present, to allege an assault and the nature thereof, a mortal wounding of the deceased, and that the deceased died of such wounds within a year and a day.    These facts being properly stated, the legal conclusion therefrom may then be stated, that the defendant did kill and murder the deceased. Nothing short of this will, in our judgment, secure to the defendant his constitutional right to be informed of "the nature and cause of accusation." In the case of *People v. Jacinto Aro*, 6 Cal. 207, the indictment charged that the defendant did kill and murder the deceased with a Colt's pistol and a dirk knife, but it contained no description of the offense, nor statement that the deceased came to his death by the wounds inflicted.    The court said :    " Murder is a conclusion drawn by the law from certain facts, and in order to determine whether it has been committed, it is necessary that the facts should be stated with convenient certainty ;" for this purpose the charge must contain a certain description of the crime of which the defendant is accused, and a statement of the facts by which it is constituted, so as to identify the accusation, lest the grand jury should find a bill for one offense, and the defendant be put on his trial in chief for another.    In this particular, at least, it may be safely said that our statute has not altered the common law, and no one, I apprehend, would maintain that under the old system of practice, either in England or the United States, the allegation of a legal conclusion, instead of the facts which are the predicate of a conclusion, ever has been held sufficient," and the indictment was held to be defective.    The provisions of the criminal practice act of California at a later period, however, were held to authorize a departure from the rule thus laid down.    *People v. Sanford*, 43 Cal. 29.    But this fact does not impair the force of the reasoning in the case cited. There is a growing disposition on the part of the courts to discourage useless formality in pleading, in criminal as well as in civil proceedings, but care should be taken not to

dispense with matters of substance under the guise of discarding mere matters of form. Vide, State v. Sides, 64 Mo. 383; State v. Lakey, 65 Mo. 217; State v. Steeley, 65 Mo. 218; State v. Mayfield, 66 Mo. 125. We are of opinion, therefore, that the second, third and fourth counts are defective.

The first and fifth counts, however, are good, and under the rule which obtains in this State, that where there 3. GENERAL VERDICT: one good count are several counts charging the same offense, one good count will sustain a general verdict of guilty, the indictment must be held to be sufficient. State v. Jennings, 18 Mo. 435; State v. McCue et al., 39 Mo. 112; State v. Pitts, 58 Mo. 556; Vide, State v. Baker, 63 N. C. 276.

It appears from the evidence that John and Joseph Blan were half brothers of Mrs. Warren, the wife of the deceased. John Blan and the deceased had quarreled in the town of Alton on the day of the homicide. John and Joseph Blan returned to the house of the deceased about seven o'clock in the evening. The deceased returned about an hour later, and finding John there, said "I didn't think you would be caught here," and drew a revolver, but, so far as the record shows, did not attempt to use it. John ran off and Joseph remained, as he states, about five minutes, when he left also. About ten minutes after Joseph left, John came suddenly upon the deceased, from behind, while he was sitting in a chair in front of and near the corner of his cabin, and struck him a heavy blow upon the head with a club. Warren fell forward upon his knees. He rose exclaiming, "My God! children, I am killed!" and after walking a few feet fell again. After his wounds were dressed, he went to bed, and about an hour later the family retired for the night. After striking the deceased with a club, the defendant went to the house of a neighbor, two miles distant, and there borrowed and loaded a double-barreled shot-gun. The testimony strongly tends to show that he then went to his own home, which

was near by, left Joseph there, and went immediately to the house of the deceased, entered the cabin while all were asleep, and discharged a heavy load of shot in the face of the deceased. The family were aroused by the report of the gun, and Elijah Warren was found to be dead.

Joseph Blan, who was a witness for the defense, testified on his cross-examination to certain angry words **4. THE ACCUSED CAN WAIVE OBJECTIONS TO EVIDENCE: practice in supreme court** uttered by the defendant to the deceased in the quarrel at Alton; and two witnesses were called by the State to contradict Mrs. Blan, the mother of the defendant and a witness for him, as to certain immaterial and irrelevant statements made by her in relation to the homicide. All this testimony was admitted without the slightest objection from the defendant or his counsel, and its admission was not even made a ground of complaint in the motion for a new trial. We are now asked to reverse the judgment in this case because of the admission of this evidence; and it is earnestly insisted upon the authority of the *State v. Davis*, 66 Mo. 684, that the prisoner cannot waive any right, or be prejudiced by any failure on his part, to object to the introduction of improper testimony. While the testimony now objected to is, perhaps, irrelevant, it was not at all essential to the conviction of the defendant, and taken all together, could do him no harm. But, if it were otherwise, if the testimony now complained of had been prejudicial to the defendant, it would be a dangerous practice, one fatal to the administration of the criminal law and the peace of society, to permit objections to the introduction of testimony to be made for the first time in the court of last resort. Such a practice could not be tolerated, and the *State v. Davis* is no authority for it. That decision, which is undoubtedly correct, relates to proceedings prescribed by statute for the protection of the prisoner, of an entirely different character; and a waiver of objections to testimony is, by the very language of that decision, impliedly excepted from the rule there laid down. In this State the prisoner may be a

witness in his own behalf, and is subject to cross-examination like any other witness, and if the rule now contended for should receive our sanction, it would be utterly impossible ever to obtain a conviction which would stand, and the criminal law of the State would become a dead letter. The prisoner, himself, would only have to state in his testimony in chief, or on cross-examination, some incompetent and irrelevant matter highly prejudicial to himself, and then, after conviction, ask a reversal of his sentence at our hands for having done so; for the error of its admission could not be cured by the trial court by instructing the jury to disregard it. *State v. Rothschild*, 68 Mo. 52; *State v. Daubert*, 42 Mo. 242; *State v. Marshall*, 36 Mo. 400; *State v. Mix*, 15 Mo. 153; *State v. Wolf*, 15 Mo. 168.

The testimony contained in the transcript before us is amply sufficient to sustain the verdict, and the instructions of the court are unobjectionable. The judgment of the court of appeals will, therefore, be affirmed. The other judges concur.

AFFIRMED.