## SNOW et al. vs. GRACE.

29 131
55 243

1. PRACTICE: *Substituted declaration.*

   It is not error to permit a new declaration to be substituted for one that has become almost illegible from use.

2. CONTRACT: *Consideration.*

   The compromise of litigation is sufficient consideration for an express promise.

3. CONFISCATION: *Proceedings and evidence necessary to sustain.*

   The acts of congress of August 6, 1861, and July 19, 1862, required confiscation to be decreed by a district court of the United States and title through that source must be proved by the record. Persons claiming confiscation under the 1st section of the act of May 11, 1866, must establish a military seizure of the property, and evidence tending to prove the seizure is properly left to the jury.

4. AGENCY: *Ratification.*

   An instruction that the acceptance by the principal, of a valuable consideration for property sold by a general agent ratified the sale, and the principal could not repudiate it without returning, or offering to return, the consideration, held to be substantially good in view of the evidence, though it would have been more correct to have qualified the effect of the acceptance by the principal's knowledge of the transaction.

5. EVIDENCE: *Opinion of impeaching witness.*

   The rule heretofore adopted by this court, allowing an impeaching witness to testify as to his belief, adhered to, though questioned.

6. — *Of previous reputation for truth and veracity.*

   The admission of testimony as to the reputation of a witness for truth and veracity, at some other time, and at a different place from that of his residence at the time of testifying, is in the discretion of the court; and it is only in cases of gross abuse, that the discretion will be controlled, especially where no suprise is shown.

APPEAL from *Jefferson* Circuit Court.

Hon. HENRY B. MORSE, Circuit Judge.

*Yonley,* for appellant.

WILLIAMS, Sp. J.   This case was before this court on a former occasion, and the judgment rendered therein by the circuit court of Jefferson county was reversed, and the cause was remanded.   On the filing of the mandate of the supreme court the cause was regularly tried by a jury, which rendered a verdict in favor of appellee, upon which judgment was rendered.   From this judgment defendants below have appealed to this court.   Pending the trial defendants below excepted to sundry rulings and decisions of the court; and at the conclusion of the trial, pursuant to leave given by the court for time to prepare their bill of exceptions, presented the same, which contained all the evidence, instructions of the court, etc.

They also moved for a new trial on the grounds, as stated:

1.  That the verdict is contrary to evidence.

2.  That the verdict is contrary to law.

3.  That it was contrary to the instructions of the court.

4.  Because the court refused to give appellant's instruction.

5.  The court erred in giving appellee's instruction.

6 and 7.  The court erred in admitting testimony tending to impeach appellants.

8.  The court erred in admitting testimony of appellee, and in refusing testimony of appellants.

The court below overruled this motion, and appellants excepted.

The appellants here urge that the court below erred in allowing plaintiff to file a new declaration.   The order states that defendants (appellants) waived their exception to the new declaration and bond, and argued the motion to strike out the affidavit (in attachment), which was by the court sustained; and that the court allowed the new declaration to be substituted, because the old one, from use, had become so defaced as to be almost illegible.   There is nothing in this objection, even if appellant had not waived it.

It is next argued that the grounds of the motion for new trial are well taken, and that the verdict is against law and evidence; that Grace had no property in the bagging and ties, for the price of which this suit was brought, on the ground, *first*, that the express promise, on the part of the appellants to pay, which there is testimony tending to prove, is without consideration, if Grace had no property. To this it is sufficient to say, that the compromise of litigation, which the testimony proved existed in this case, is a sufficient consideration for an express promise; *second*, that there is for the same reason no implied promise to pay; that Key, who sold them to Grace, had no authority from Sheppard, the owner, to sell, and if he had authority from Sheppard, still it was abandoned property within the meaning of the act of congress, and had been confiscated, and that we must presume this confiscation from the facts proved.

The appellee introduced evidence on the trial tending to prove that a short time before the occupation of Pine Bluff, Arkansas, by the Federal army, in 1863, he had bought of one Key, who, the evidence tended to show, was the general agent and manager of James Sheppard, 250 bales of cotton, on the place of Sheppard, in Jefferson county, Arkansas, known as the Island place, together with all the bagging and ties and rope on said place, being bagging and rope enough to bale one thousand bales of cotton; that the bagging was worth one dollar per yard, and the rope and ties fifty cents per pound at the time appellants used them. The evidence tended to prove subsequent ratification by Sheppard of Key's action, by receiving the price paid to him by Grace for the cotton and bagging, rope and ties, and that appellants had expressly promised to pay plaintiff for the bagging, etc. To this testimony appellants objected at the time of its introduction, and the court overruled the objection and permitted the

testimony to go to the jury. This action of the court was made one of the grounds for the motion for new trial, the points having been properly saved during the progress of the trial.

We see no error in thus admitting appellee's testimony. If uncontroverted, it would have strongly tended to establish appellee's case; and in view of appellant's testimony, subsequently introduced, the whole case was one for the jury, and the court did not err in refusing to exclude this testimony from them.

The defendants below testified in the case, and their testimony tended to prove that James Sheppard, the owner of the plantation, was absent at his home in Virginia at the time of the Federal occupation of Pine Bluff, and that Key, his manager, had left the plantation, and taken the negroes and live stock, etc., off the place, and had gone south; in this, acting under Sheppard's instructions, leaving the bagging and ties in controversy, and cotton and corn, on the place; that appellants had made a contract with Powell Clayton, commander of the post at Pine Bluff, for the gathering of the cotton and corn on the place. Appellants contradict plaintiff's testimony by denying any express promise to pay for the bagging and ties; they also, against the testimony of plaintiff, testify that they delivered to Grace, in full compromise of all claims, a large amount of cotton. Grace admitted the receipt of the cotton, but stated that it was received only in settlement and compromise of his claim on the cotton; and that appellants expressly promised to pay for the bagging and ties. Appellants further testified that Powell Clayton, the commander of the post, had ordered them to use the bagging and ties, which, they claim, protects them.

The acts of congress of the 6th of August, 1861 (12 Statutes at Large, 319), and of the 17th of July, 1862 (id., p. 591), both

Snow et al. vs. Grace.

required confiscation to be decreed by a district court of the United States; and if appellants claim title by confiscation, they must show title by the record, or at least make the record the foundation of it. Under the act of congress regulating captured and abandoned property, approved March 12, 1863 (12 Statutes at Large, 820, secs. 1 and 2), it would be necessary to show that their title was derived from a treasury agent in pursuance of the provisions of that law; and as a treasury agent was but a ministerial and not a judicial officer, whose decrees possess the power of concluding all questions, it would, perhaps, be necessary also to show all necessary facts which, under the law, gave him power to sell, or appraise, or appropriate to public use, as no title is here traced to a treasury agent. This question is not before us. If the appellants claimed exemption from suit under the provisions of the first section of the act of congress of May 11, 1866, even if that act applied here, it would have devolved on them to have established a military seizure of the bagging and ties, and the evidence tending to prove this was properly left by the court to the jury to determine. And giving the appellants the fullest possible protection from any or all these acts of congress, still, in view of the evidence of a compromise and an express promise, we could not disturb the finding without violating those rules which have governed this court from its foundation; especially that rule which prescribes that where there is any evidence to support the verdict, we will not disturb it except for errors of the court.

The appellants assign as error the ruling of the court in giving the fourth instruction asked for by plaintiff below, which is: If Key was the general agent of Sheppard, and the jury believe that as general agent he sold the property to plaintiff for a valuable consideration, and Sheppard accepted that consideration, he thereby ratified the sale,

and he could not in law repudiate the same without returning, or offering to return, the consideration; although it would have been better if the court had added after the words "accepted that consideration," the further words, " with full knowledge of the transaction," the instruction would have been more correct; but taking it entire, especially the first and last clauses being considered, in view of the evidence, we think the instruction is substantially correct.

The appellants also excepted to the ruling of the court in refusing to give the third instruction which they asked, to wit: If the jury believe from the evidence that said bagging and ties were not actually delivered by Key to Grace at the time of said supposed sale, and that Grace paid therefor in whole or in part in confederate money, then the contract was void in law, and could not have been enforced against Sheppard, and the jury will find for defendants. We find no error in refusing to give this instruction as asked. In view of the evidence, $500 of the price having been paid in gold, if this instruction had been given, the jury might have been misled by it.

The only remaining question in the case which is of any moment is, whether the court erred in allowing the impeaching testimony of six or eight citizens of Pine Bluff, tending to impeach the veracity of appellants. The question asked of the witnesses, severally, was: Did you know the reputation of Josiah Snow and William D. Snow in Pine Bluff, in 1862, 1863 and 1864? The witness answered in the affirmative, and then, in answer to a question, gave the opinion on that knowledge, that they would not believe them on oath.

There is good authority which holds that the witness should be confined to a statement of the fact of bad character for truth, and give no opinion as to his own belief. In England, and most of these states, however, the witness is allowed to go further and state his opinion. 1 Greenl. Ev., sec. 461. It is

difficult to see the reason for allowing the witness to give his opinion, for it is certainly not the question of an expert. Yet the rule which has long obtained in England has been too long followed in this state to be disturbed.

Mr. Greenleaf says: "that this testimony must come from his neighbors, and not from one who is sent into the neighborhood of the witness to search out his character." In this case, seven years had intervened between the time when the impeaching witnesses lived in the neighborhood of the impeached, and the time they testified. One of the modes of impeaching a witness is to show bad reputation. This inquiry, says Mr. Greenleaf (1 Greenl. Ev., 461), is confined to general facts. Now, all of this is, that a man's reputation for truth may be considered. But where is this reputation to be gathered? From his neighbors, says Mr. Greenleaf. Neighbors, when; at the time of testifying, or at another time before? The same author says: "The inquiry must be made as to his general reputation, where he is best known. He, the impeaching witness, must be able to state what is generally said of the person by those among whom he dwells, or with whom he is chiefly conversant." Where? And the decisions cited by him do not say any more, or answer the question; and not one of them which we have been able to examine, presents this question at all or passes on it. See *Boynton v. Kellogg*, 3 Mass., 192; *Wike v. Lightner*, 11 S. & R., 198, 199, 200; *Kimmel v. Kimmel*, 3 id., 337, 338; *Phillips v. Kingfield*, 1 App., 375.

In the case of *The United States v. Van Sickle*, 2 McLean, 219, Judge McLEAN says: The proper inquiry is, What is the general character of the witness for truth, in the place where he resides? But the question before him, in that case, was: Shall the inquiry be confined to the question of veracity, or shall we inquire as to general moral character? Therefore,

in this sentence, "truth" is the emphasis, and not "the place where he resides."

Where the present character of a witness was slightly impeached, evidence of past bad character may be admitted to strengthen it. So held in the case of *The People v. Abbott*, 19 Wend., 192. In the case of *Rathbun v. Ross*, 46 Barb. (N. Y.), 127, evidence of bad character of a witness in a town where he had resided eight years was objected to on the ground that the witness, who was sought to be impeached, had a fixed residence in another place for the last three or four years, and that the evidence must be directed to his present character and his present residence, about which the impeaching witness did not know anything. Held, by the supreme court of New York, that it was error in the court below in excluding such evidence. In delivering the opinion of the court in that case, JOHNSON, J., says: "In the present case the witness had known the person sought to be impeached, up to within five years of the trial. The law does not presume that a person of mature age, whose general character has been notoriously bad up to within a period of five years, has reformed so as to have acquired an unimpeachable reputation since that time. Reformation may be shown in answer to the attack, but the law will not presume it in advance." .

The case of *Sleeper v. Van Middlesworth*, 4 Denio, 431, presents the same question. In that case the impeaching witness did not know the reputation of the witness which was sought to be impeached, where he lived at the time of testifying; but knew what it had been four years before at another place. The supreme court of New York held, that the rule of law which presumed that the existence of a person, a personal relation or a state of things, once established by proof, continues the same until the contrary is shown, is applicable within reasonable limits to the character of a witness, proved to have once sustained a bad reputation for truth and veracity.

In the case of *Woodman v. Churchill*, 51 Me., 112, impeaching evidence of this kind from the neighborhood of the impeached witness had been received. The party who introduced the impeached witness was allowed to sustain his character by proving the character the witness bore in a town other than the one he resided in at the time of testifying, but where the impeached witness had lived many years.

In *Quinsigamond Bank v. Hobb*, 11 Gray (Mass.), 250, a witness had been impeached, and the party who introduced him was allowed to prove that his character for truth was good formerly, before he failed in business, although it had been bad since.

In the case of *Aurora v. Cobb*, 21 Ind., 492, it was held, that evidence designed to impeach the general character of a witness should relate to the time when he testifies, and his character at the place where he then resided amongst those who knew it there. To the same effect, substantially, is the decision in the case of *Rogers v. Lewis*, 19 Ind., 405.

The supreme court of the United States, in the case of *Teese v. Huntingdon*, 23 How., 2, held that it was in the discretion of the court, before which the trial was had, to reject evidence of former bad character, and determine whether the evidence offered was too remote. In that case the witness, being asked the question, answered : he had not known the witness sought to be impeached for five years. The court below having refused to let the impeaching witness testify further on the point, the supreme court of the United States refused to disturb the verdict on the ground that the admission or rejection of it was a matter within the discretion of the court below.

An instruction which confines the jury, in considering such impeaching evidence, to such statements as have been made by those among whom the impeached witness dwells, and to whom he is known, was held to be a misleading instruction by the supreme court of Kentucky. 2 Metc., 342.

In Vermont, it has been decided that evidence of former reputation is not admissible. *Willard v. Goodenough*, 30 Vt. (1 Shaw), 393.

To the same effect is *Rucker v. Beatty*, 3 Ind., 70. A witness testified that he knew a previous witness in the old country, and that said witness had resided in this country above five years. The question was then asked, whether he knew his character for truth in the old country. It was held improper. *Webb v. Hawke*, 4 Mich., 198.

The supreme court of Illinois held such evidence of former character in another place than that of residence at the time of testifying, admissible. *Holmes v. Stoteler*, 17 Ill., 453.

In Alabama, it was held that a witness was competent as an impeaching witness, who moved into a neighborhood the impeaching witness formerly lived in about the time he left, and could testify as to the reputation he left behind him there. *Martin v. Martin*, 25 Ala., 201. In Georgia, an impeaching witness testified that he had known the impeached witness eight or ten years in the county of Russell, Alabama, and that he had a reputation there. Held, that it was proper to ask the witness as to the reputation of the impeached witness in Alabama. *Boswell v. Blackman*, 12 Ga., 591.

It was held in *Bates v. Barber*, 4 Cush., 107, that the impeaching testimony of this kind was a question of fact to be tried by the jury, and the court could not, before admitting it, institute an inquiry as to the impeaching witness' means of knowing the reputation about which he testifies.

In the case of *Morss v. Palmer*, *Morss v. Ayres*, 15 Penn. St. (3 Harris), 51, it was held that, in support of an impeached witness' character he is not confined to the same neighborhood, or time spoken of by the impeaching witness; but he may prove his character years previously, and in a different county in which he had resided.

It will be thus seen that the authorities are in conflict on this question. It seems to us, however, that the reputation a witness has for truth is a mere circumstance, which the rules of law allow to be considered by the jury to aid them in determining the degree of credit to be given the witness, and is purely a question of fact. If so, does not reputation at some other time than that of testifying, and some other place than that of the then residence, equally tend to shed light upon the question of credit? The light may be dim and flickering, on account of remoteness, but is it not still light? The remoteness of time and place are also circumstances and facts to which, ordinarily, under proper instructions, the jury will give due weight. If this sort of testimony is to be admitted at all, it would be difficult to draw the line, and say where it—the evidence of reputation—ceases to be fact and becomes a question of law.

Doubtless there are cases in which the testimony would be too remote as to time, and the court, in its discretion, might exclude it, as in the case cited from 23 How. Its exclusion, in that case, rested in the sound discretion of the court—so held. So likewise is its admission within the same discretion of the court, when remoteness is the only objection to it, and unless the circumstances of the case show a gross abuse of this discretion, we should not set aside the verdict, especially where no evidence of surprise is shown, and surprise being no part of the ground for new trial.

It seems reasonable that whenever witnesses of mature age, like those in this case, are proven to be men in 1863, engaged in the active business of life; who had lived at Pine Bluff for three or four years, in business there actively, had mingled with the people of the community; when, therefore, six or eight of the citizens of that city swear to their bad character for truth during that period, and not one of the two or

three thousand inhabitants of that city is heard to contradict, it would, under such circumstances, be going too far to say that this circumstance should not have been considered by the jury, because the witnesses impeached had been absent from Pine Bluff seven years, without any proof that they had another place of residence within that period long enough established and fixed, to enable them to have established a better reputation.

Affirmed.

Hon. W. M. HARRISON, J., did not sit in this case.