## EVANS *v*. STATE.

### Opinion delivered July 1, 1893.

1. *Disqualification of judge—Exchange of circuits.*
   A circuit judge who has temporarily exchanged circuits with another judge, under the regulations prescribed by law, is not disqualified to preside at the trial of a cause there pending because of the disqualification of the regular judge.

2. *Indictment—Misprision.*
   An obviously clerical error in the use of "defendant" for "defendants" will not vitiate an indictment.

3. *Homicide—Joint indictment.*
   An indictment jointly charging two persons with murder committed by shooting with a gun held in their hands is not demurrable because they "are alleged to have had in their hands

only one gun by and through the instrumentality of which only they are alleged to have taken the life of" deceased.

4. *Evidence—Dying declaration.*

A statement by one who has been shot respecting the circumstances under which the wound was inflicted is admissible as a dying declaration; in a prosecution for the killing of such person, if made at a time when he did not expect to survive the injury, although this was five or six days before his death and at a time when he did not apprehend immediate dissolution.

5. Res gestae—*What are not.*

Evidence of what defendant said to a witness about the shooting three hours after it occurred is not admissible as part of the *res gestae.*

6. *Evidence—Uncommunicated threats.*

Where defendant testified that he killed deceased under apprehension of mob violence, and that his reason for fearing a mob was that he had overheard threats made by one G. on a previous occasion, which threats, however, G. denied having made at that time and did not remember having made at all, it is not an abuse of discretion for the court, after testimony on both sides is closed, to refuse permission to defendant to prove, in substantiation of his own testimony, that G. had made such threats elsewhere in the hearing of others, unless they had been communicated to defendant before the killing.

7. *Verdict—Form.*

A verdict of guilty of murder is not affected by omission of the words "in manner and form as charged in the indictment."

Appeal from Ouachita Circuit Court.

ALEXANDER M. DUFFIE, Judge. (On exchange of circuits with Judge Chas. W. Smith.)

*Bunn & Gaughan* and *Jesse B. Moore* for appellant.

1. The demurrer should have been sustained to the indictment because:

(*a.*) Defendant and Neyman are accused of murder, but only one of them is charged with the acts constituting the offense, and which one is not shown. 37 Ark. 408; *id.* 412, 421; 38 *id.* 519; 1 Wharton, sec. 285; Mansfield's Digest, sec. 2105; 33 Ark. 561.

(*b.*) The defendant and Neyman are alleged to have had in their hands only one gun, through the instrumen-

tality of which the crime was committed. This involves the concurrence of a physical and a moral act impossible of existence and presumptively false.

2. Review the instructions given and refused, and contend that there was error. Citing many authorities.

3. It was error to exclude the testimony of Martha Hutchinson. If not part of the *res gestae*, it was admissible to admit the testimony of Ainsworth. 48 Ark. 338.

4. It was error to exclude the testimony of Bishop and Scarborough. This testimony would have tended to prove the theory of threatened violence by a mob, and that appellant's fears of mob violence were not the result of imaginary but substantial causes. It would also have contradicted Goode in his denial of having made threats, and have shown the real animus of Goode, and his bias and prejudice against appellant. 29 Ark. 250.

5. The verdict does not state that appellant was guilty "as charged in the indictment."

6. It was error to admit the witness Goodwin to testify to the declarations of Wamble as a dying declaration. These declarations were made at particular times when he was being moved under temporary pain, etc. It does not appear that there was an abiding conviction of impending death, or that his condition was hopeless; that they were made in extremity, at the point of death, or when every hope had gone, etc. 1 Greenl. Ev. secs. 156, 158; 39 Ark. 227; 55 Cal. 72; 8 Tex. App. 71; 63 N. Y. 38; 17 Ala. 622; Whart. Cr. Ev. sec. 292 and note.

7. The verdict is against the law and the evidence.

*James P. Clarke*, Attorney General, for appellee.

1. The indictment is sufficient under the statute. Mansf. Dig. sec. 2106.

2. The allegation as to the gun in their hands is not defective. It was not a physical impossibility,

though improbable.    72 Ill. 303; 30 Conn. 500.    The
allegation that the gun was held in the hands of defend-
ants is not essential, and may be treated as surplusage.
Kerr on Hom. sec. 257; 67 Mo. 13 ; 27 id. 13.    But our
statute makes all present aiding and abetting princi-
pals.    The act of each is therefore the act of all.
Mansf. Dig. sec. 1506 ; 105 Mass. 592 ; 27 Mo. 13 ; 72
Ill. 303.

3.    The exchange of circuits was made by agree-
ment, according to law.    Mansf. Dig. secs. 1374–5, 1471.

4.    The instructions as a whole correctly embody
the law.

5.    The statements made by appellant three hours
after the killing were mere narratives of past occur-
rences, and in no sense part of the *res gestae.*    19 Ark.
590 ; 46 id. 141 ; 34 id. 480 ; 43 id. 289 ; 43 id. 102.

6.    The proper predicate was laid for the admission
of Wamble's dying declarations.    It was the province of
the court to determine their admissibility, and of the
jury to give them their proper weight.    1 Gr. Ev. sec.
160 ; 20 Ark. 36.

BATTLE, J.    The appellant, Evans, was indicted by
a grand jury of the Union circuit court for murder.    On
his motion the venue was changed from Union to
Ouachita county, where he was tried in the circuit court,
and convicted of murder in the second degree, and his
punishment was fixed at twenty-one years in the peni-
tentiary.

1. Authority
of circuit judge
to exchange
circuits.

On the 22nd of November, 1892, A. M. Duffie, judge
of the 7th judicial circuit, and C. W. Smith, judge of
the 13th judicial circuit, of Arkansas, entered into a
written agreement, by which they exchanged circuits
from the 22nd to the 24th day of November, 1892, in-
clusive, the said C. W. Smith agreeing to perform the
duties of the 7th circuit, and A. M. Duffie agreeing to

discharge the duties of the 13th, for said period.   In this period of time Judge Duffie presided as judge of the Ouachita circuit court, and appellant was tried.   Before his trial he protested against Judge Duffie presiding therein because, he said, Judge Smith was "related within the fourth degree by affinity to Henry Wamble, the person charged in the indictment herein to have been killed by the defendant, the said C. W. Smith being the uncle by blood of the wife of said Henry Wamble, who is also deceased, leaving issue surviving each of them now living;" and because Judge Duffie was presiding under said agreement, which had been filed and made a part of the record of the court.   The State filed a demurrer to the protest, and the court sustained it.

Appellant insisted that Judge Duffie had no right or was disqualified to preside in his trial because of Judge Smith's relationship to the deceased.   How this could disqualify Judge Duffie we are unable to understand. The constitution authorized them to temporarily exchange circuits or hold courts for each other under the regulations prescribed by law ; and the statute empowered them to exchange circuits or hold courts for each other for such length of time as seemed to them practicable and to the best interest of their respective circuits and courts.   The disqualification of one to preside in causes pending in his courts or the impropriety of his so doing might well have been a good cause or reason for the exchange.   In exchanging circuits they had the right to fix the time according to what in that respect seemed to them practicable and to the best interest of their respective circuits and courts.   When the exchange was made, the law did not limit the right of either to preside in trials to those wherein the regular judge was not disqualified.   The disqualification of one did not attach to the other or affect his qualification.

The indictment of the appellant was as follows: "The grand jury of Union county, in the name and by the authority of the State of Arkansas, on oath accuse the defendants, John Evans and Dick Neyman, of the crime of murder, committed as follows, to-wit: The said defendant, on the first day of May, 1892, in Union county, Arkansas, did unlawfully, wilfully, feloniously, and of their malice aforethought, and with premeditation and deliberation, assault, kill and murder one Henry Wamble, in the peace of the State, by shooting him, the said Wamble, with a gun loaded with gun-powder and leaden bullets, which said gun was then and there a deadly weapon, and in the hands of them, the said John Evans and Dick Neyman, had and held, with the felonious intent, and with malice aforethought and with deliberation and premeditation, him, the said Henry Wamble, to kill and murder, against the peace, etc."

Appellant demurred to it for the following reasons :

1st. "That in said indictment the defendant and Dick Neyman are accused of the crime of murder, but that only one of them is charged with the acts constituting the offense, and which one is not shown."

2nd. "That the defendant and Dick Neyman are alleged to have had in their hands only one gun, by and through the instrumentality of which only they are alleged to have taken the life of Henry Wamble."

2. Effect of clerical misprision in indictment.

The demurrer was overruled. The first ground points out what is obviously a clerical error. The indictment shows that *defendants* was unquestionably intended instead of "defendant." There can be no excuse for mistaking its meaning.

3. Validity of joint indictment for murder.

The second ground is untenable. The defendants, if they were present aiding and abetting the killing, were principals and were properly indicted as such. It is immaterial which of them is charged with having inflicted the mortal wound, because, both being present

aiding and abetting, the law imputes the injury caused by one to the other. They are accused of a murder committed by shooting with a gun held in their hands. This act, although improbable, is not physically impossible. The demurrer, for its purposes, admits it and the other allegations in the indictment to be true. If true, the defendants are guilty of murder, and the demurrer was properly overruled. *State* v. *Dalton*, 27 Mo. 13; *State* v. *Blan*, 69 Mo. 317; *State* v. *Payton*, 90 *id.* 220; *Coates* v. *People*, 72 Ill. 303; *State* v. *Zeibart*, 40 Iowa, 169; Kerr on Law of Homicide, secs. 276, 277.

In the trial evidence was adduced tending to prove, among other facts, the following: On the 29th of March, 1892, " a warrant was placed in the hands of the deceased, Henry Wamble, who was a deputy sheriff, for the arrest of the appellant and Dick Neyman, upon a charge of murder. The deceased summoned a posse to aid in making the arrest," and on the next day, about or little before sunrise, they went to the house of Neyman and entered it and found signs of its having been occupied the previous night. As they came out of the back door the appellant and Neyman were discovered about 75 or 80 yards from the house, retreating to the woods. '' The deceased called to them several times to halt, and they stopped, leveled their guns, and a general firing followed on both sides. After the shooting the appellant and Neyman escaped into the woods, and the deceased was found lying on the ground fatally wounded, a ball having entered just above the left hip joint, ranged backward and a little downward, and lodged in the spinal column."

In the course of the trial the State introduced Francis Goodwin as a witness, who testified, substantially, as follows: Henry Wamble died at the house of witness. After he was shot and five or six days before he died, he said he was bound to die. He said, at six

4. As to dying declarations.

different times, that he did not believe he would ever get well. In moving him his wound hurt him, and he said that he would not get well, that the wound would kill him, and then he made the following statement : While he, the deceased, was in Neyman's house with his posse some one said, "Here they are." He went to the back door and "started" toward the garden and saw appellant and Neyman running off. He advanced toward them while they were retreating until he reached the garden palings. He "hailed" them as many as three or four times and notified them that he held a warrant for their arrest. About the time he reached the garden they "turned" and presented their guns. He saw that they intended to shoot, and he "drew" his gun to his face and fired as quickly as he could. He and the appellant fired about the same time ; if any difference, he fired first. Appellant shot him.

The statement of the deceased was admitted as evidence over the objections of the appellant. He insists that it was not admissible, because it was not made under a sense of impending death, and with the prospect of almost immediate dissolution.

The declarations of a person who has been wounded, respecting the circumstances under which the wound was inflicted, are admissible in prosecutions for the killing of such person, if made at a time when he did not expect to survive the injury, and all hope of recovery had been supplanted by the conviction that he would certainly die. The time when made need not be when the declarant apprehended immediate dissolution. But they are admissible if made at any time when he believed that death was impending and certain. *Dunn* v. *State*, 2 Ark. 229, 246, 247 ; Wharton's Criminal Evidence (8th ed.), secs. 276-284 and cases cited.

It is within the province of the court to hear the circumstances under which the declarations were made

and to determine whether they are admissible. But after they are admitted it is within the province of the jury to weigh them and the circumstances under which they were made, and give to them only such credit, upon the whole evidence, as they may think they deserve. 1 Greenleaf on Evidence, sec. 160; *Dunn* v. *State*, 2 Ark. 247.

We think that the circumstances under which the declarations in question were made were sufficient to warrant the court in admitting them.

The appellant offered to prove what he said to Martha Hutchinson about the shooting three hours after it occurred, and the court would not permit him to do so. It was no part of the *res gestae*, and was properly excluded.

5. As to *res gestae*.

Appellant in his own behalf testified, substantially, that he thought that Wamble and his posse were a mob in pursuit of him when he fired at them; and that his reason for fearing a mob was: On the day of the coroner's inquest over the body of Charles Austin, on the Goode place, he heard Charles Goode, and he thought from the voice, Will Britt, in an old field, in a pine thicket near the Goode place, talking, and, among other things, heard Goode say that if he could get a crowd to go with him, he would hang appellant to a limb or drive him out of the country. After the close of the testimony in behalf of appellant, Charles Goode; in behalf of the State, testified that he did not make the statement mentioned by appellant, and that he did not remember having made the same statement on the Goode place, on the day of the inquest, in the presence of Marshall Bishop and John Scarborough. Appellants, after the close of the testimony in rebuttal for the State, for the avowed purpose of substantiating his testimony as to the language used by Goode offered to show by Bishop and Scarborough that they had heard

6. As to uncommunicated threats.

Goode make use of language similar in import, if not identically the same, on the Goode place, on the day of the inquest, and the court refused to allow him to do so.

Appellant's excuse for shooting at Wamble and his *posse* was, he mistook them for a mob seeking to inflict on him some great injury. He sought to sustain his testimony on this point by the rejected testimony. The facts he proposed to prove by Bishop and Scarborough could not have added to his fears of a mob and in this respect sustained the theory of his defense unless they had been communicated to him before the shooting, and there was no evidence that they were. They did not tend to show the existence of a mob, since the evidence in the whole case only tended to prove that one man proposed to form a mob, and he did not undertake to hang or drive him out of the country, unless others would assist. Appellant did not propose to attack the veracity of Goode, but simply to "substantiate" his own testimony. Under such circumstances we do not think the court abused its discretion in refusing to allow him to introduce the excluded testimony for the purpose of substantiating his testimony at the time when the testimony in behalf of both parties had been closed.

Many instructions were given over the objections of the appellant, and many were asked by him and modified by interlineations and erasures and given as modified. We have examined all of them carefully, and given to them due consideration, and find, when considered and construed as a whole, as the court expressly instructed the jury to do, no error in them as given, and in the refusal to give them as asked, prejudicial to appellant.

7. Form of verdict.

The verdict returned into court was: "We the jury find the defendant, John L. Evans, guilty of murder in the second degree, and assess his punishment at twenty-one years in the State penitentiary. C. S. KEITH, Foreman." The omission of the words "in manner

and form as charged in the indictment" did not affect its validity. *Dixon* v. *State*, 29 Ark. 171.

The evidence was sufficient to sustain the verdict.

Judgment affirmed.

The Chief Justice did not sit in this case, having been of counsel.