## ALFORD *v.* STATE.

### Opinion delivered November 26, 1923.

1. CRIMINAL LAW—DYING DECLARATIONS—INSTRUCTION.—Where, in a prosecution for murder, the court refused a correct instruction telling the jury that a statement by deceased, offered as a dying declaration, must have been made under a sense of impending dissolution, but instructed the jury that, in considering such statement, it "should be weighed under the same rules as the statements of the witness," *held* error.

2. HOMICIDE—DYING DECLARATIONS—JURY QUESTION.—Notwithstanding the admission of dying declarations in evidence by the court upon a *prima facie* showing that they were made *in extremis,* it is the province of the jury whether such declarations were made under consciousness of impending death.

3. HOMICIDE—DYING DECLARATIONS—REPUTATION OF DECEASED.—Where a witness, introduced to impeach dying declarations of deceased, testified that his reputation for truth and morality was bad, it was error to exclude a question whether, judging from deceased's reputation, the witness would believe him on oath.

Appeal from Nevada Circuit Court; *James H. Mc-Collum,* Judge; reversed.

*J. O. A. Bush,* for appellant.

*J. S. Utley,* Attorney General, *John L. Carter, Wm. T. Hammock* and *Darden Moose,* Assistants, for appellee.

HUMPHREYS, J. Appellant was indicted in the circuit court of Nevada County for the crime of murder in the first degree for killing Dee Cook. Upon trial of the charge she was convicted for manslaughter and

adjudged to serve a term of four years in the State
Penitentiary as punishment therefor, from which is
this appeal.

Appellant insists upon a reversal of the judgment,
assigning many reasons therefor. Most of the assign-
ments of error are based upon exceptions to instructions
given and refused. A careful examination of them
reveals that the court erred in refusing to give appel-
lant's request No. 10 in the form asked, and in modify-
ing and giving it in its modified form. Appellant's
request No. 10 is as follows:

"You are instructed that, before you consider the
statements made by the deceased and offered in evi-
dence as his dying declaration, you must believe, beyond
a reasonable doubt, that such statements were made
under the belief by the deceased of impending dissolu-
tion; and that such statements are to be weighed under
the same rules as the statements of other witnesses,
and the evidence of the deceased so given may be con-
tradicted or impeached in like manner as the evidence
of any other witness."

As modified and given it is as follows: "You are
instructed that, in considering the statements made by
the deceased and offered in evidence as his dying declara-
tion, such statements are to be weighed under the same
rules as the statements of the other witnesses."

The effect of the modification was to withdraw from
the jury the question of whether deceased made the
dying declaration introduced in evidence, relative to the
manner in which he was shot, and by whom, under the
belief that he was *in extremis*. The testimony showed
that on July 4, 1923, deceased received a gunshot wound
from which his body and limbs were paralyzed; that he
died therefrom on July 9 following; that he had been
informed he could not live; that in the declaration made
by him he said: "They say I am dying as a result
of that wound, and I believe that is true, and I make
this statement freely and voluntarily in order that the

truth may be known.'' Dying declarations are admitted in evidence by the court upon a *prima facie* showing that they were made *in extremis,* but, notwithstanding their admission in evidence, it is still within the province of the jury trying the case to decide, from the whole evidence and all reasonable inferences therefrom, whether utterances were made under consciousness of impending death. It is error to take this question from the jury. 21 Cyc. pgs. 985-6-7; *Campbell* v. *State,* 38 Ark. 498; *Evans* v. *State,* 58 Ark. 47; *Rhea* v. *State,* 104 Ark. 162; *Stewart* v. *State,* 148 Ark. 540.

The other instructions requested by appellant, which correctly declare the law applicable in the case, were sufficiently covered by correct instructions given by the court.

Appellant sought to impeach the dying declaration of deceased, introduced in evidence, by showing that the declarant could not be believed under oath. ''Dying declarations are substituted for sworn testimony'' (21 Cyc. p. 987), and may, of course, be impeached in the same manner that other testimony is impeached. Booker Johnson was introduced as a witness by appellant, who testified that the reputation of deceased for truth and morality was bad in the community in which he lived. The appellant then asked him whether, judging from that reputation, he would believe him on oath. The court ruled out the question, and in doing so committed reversible error. This court said, in the case of *Cole* v. *State,* 59 Ark. 50: ''Another question arises on the objection of the defendant to the manner in which questions are propounded to and answered by witnesses called to impeach another on the ground of bad reputation for truth and morality, and also to sustain the reputation of a witness thus sought to be impeached. The plain, simple formula in the first instance is essential. The impeaching witness should be interrogated as to his knowledge of the general character and reputation, among his neighbors, for truth and morality,

of the witness sought to be impeached, and from that knowledge, if sufficient to support an opinion, whether or not he should believe the person on oath. Where a witness is introduced to sustain the character of the witness sought to be impeached, similar interrogatories should be propounded to him." To the same effect see *Pleasants* v. *State,* 15 Ark. 624; *Snow* v. *Grace,* 29 Ark. 131; *Hudspeth* v. *State,* 50 Ark. 534; 28 R. C. L.; § 215; *Lodge* v. *State,* 82 A. S. R., p. 28.

We deem it unnecessary to discuss any other assignments of error, as the matters complained of will not likely recur in a new trial of the case.

For the error indicated the judgment is reversed, and the cause is remanded for a new trial.