RUSSELL PATRICK v. STATE OF ARKANSAS

5389                                    436 S.W. 2d 275

Opinion Delivered January 13, 1969
[Rehearing denied February 17, 1969.]

*Clark, Clark & Clark* for appellant.

*Joe Purcell*, Atty. Gen. and *Don Langston*, Asst. Atty. Gen. for appellee.

GEORGE ROSE SMITH, Justice. The appellant, charged with the murder of J. F. Wilson, appeals from a verdict and judgment finding him guilty of voluntary manslaughter and sentencing him to two years imprisonment. He argues several points for reversal.

It is first insisted that the court should not have submitted the issue of voluntary manslaughter to the jury, because even if it be assumed that Patrick shot Wilson, there is no proof that he acted upon a sudden heat of irresistable passion. Ark. Stat. Ann. § 41-2208 (Repl. 1964). We have held, however, that the accused cannot complain of such a charge if the proof would have supported a finding that he was guilty of a higher degree of homicide than that for which he was convicted. *Trammell* v. *State*, 193 Ark. 21, 97 S.W. 2d 902 (1936). Hence the question is whether the evidence would have supported a conviction for murder.

We hold that it would. Wilson was 76 and Patrick almost 79 on the day of the shooting, August 11, 1967. They were living on adjoining properties on a county road in the Beckett Mountain community in Faulkner county. Wilson's widow testified that at about 7:00 a.m. her husband went down to the barn to milk. Upon hearing a loud report from a gun, followed by the barking of the Wilsons' dog, Mrs. Wilson ran down to the corral and found her husband on the ground, covered with blood. On the way down she had seen Patrick walking toward his own house, carrying a long gun. When Mrs. Wilson reached her husband, he said, "The old man shot me. Why did he do it?"

Wilson was taken to the hospital in an ambulance, and the sheriff was called. Deputy sheriff Joe Martin, state police officer Bill Mitchell, and deputy prosecuting attorney Lynn McClinton answered the call. They had been told by radio that Patrick had shot Wilson. Patrick turned over a shotgun and a rifle to the officers, saying that he had used the shotgun that morning to fire at a hawk in a tree. Wilson died in a Little Rock hospital on September 28. The cause of death was a shotgun wound that severed his spine. The court admitted in evidence a dying declaration in which Wilson said that Patrick shot him.

Upon the testimony as a whole the jury could have found that Patrick deliberately shot his neighbor. He was admittedly at the scene, armed with a shotgun that was fired at about the time Wilson was shot. There is no indication that any other possible assailant was in the vicinity, the next nearest house being a quarter of a mile away. Wilson said at least twice that it was Patrick who shot him.

Defense counsel argue here, as they doubtless did to the jury, that there was no reason for Patrick to shoot Wilson. There is proof that the Wilsons and the Patricks had been on friendly terms, though there is some indication that ill feeling had arisen from Patrick's belief that Wilson had poisoned a bull belonging to Patrick. In any event, the State was not required to prove a motive for the homicide. *Avey* v. *State*, 149 Ark. 642, 233 S.W. 765 (1921). Lack of motive was merely a circumstance to be considered by the jury in reaching its verdict, which is conclusive upon the issue of guilt or innocence.

The State introduced three shotgun pellets that were taken from Wilson's body. A surgeon testified that a fourth pellet, which lodged in the neck, was the cause of death, but that pellet was not recovered at the autopsy. Counsel now contend that the three pellets

were inadmissible, not only because they did not inflict the fatal wound but also because they could not be ballistically identified as having been fired from any particular shotgun—especially Patrick's.

That argument goes to the persuasive force of the evidence, not to its admissibility. The State's theory was that Patrick had killed Wilson with a shotgun. That shotgun pellets were found in Wilson's body unquestionably gave logical support to the prosecution's contentions. The court would have erred if it had excluded such pertinent proof.

In the same vein counsel insist that the prosecuting attorney should not have been allowed to argue to the jury that Patrick had loaded his shotgun with buckshot, there being no proof that Patrick actually had any such shells in his possession. The argument was permissible. The pellets recovered at the autopsy were buckshot. On the basis of that fact, and in the light of all the circumstances, the prosecutor was certainly entitled to present the State's theory to the jury. The court properly cautioned the jury that the prosecutor's statement was not evidence in the case.

The appellant's three remaining contentions have to do with the admissibility of evidence. We find no error in the court's action in admitting a dying declaration made by Wilson to Fern Soules, a minister who often talked with Wilson at the hospital. Mrs. Soule's testified that when she tried to encourage Wilson by saying that he would be all right, he would say, "Oh, no!" or shake his head. The court properly instructed the jury that the dying declaration was not to be considered unless the jury found it to have been made under a sense of impending death. *Alford* v. *State,* 161 Ark. 256, 255 S.W. 884 (1923); cf. Barnhart, The Determination of Facts Preliminary to Admission of Evidence in the Arkansas Courts, 2 Ark. L. Rev. 1 (1947). Even though the proof of Wilson's hopelessness was not as

strong as it might have been, it was sufficient to take the issue to the jury.

Next, we think the court properly overruled the defendant's motion to suppress proof that Patrick turned his shotgun over to the officers on the morning of the crime. At that time no Miranda warning was required, because the officers had not arrested Patrick or deprived him of his freedom in any way. *Miranda* v. *Arizona*, 384 U.S. 436, 477 (1966). Furthermore, even if the officers had first arrested Patrick, they could have searched the premises as an incident to the arrest, *Ker* v. *California*, 374 U.S. 23 (1963); so he merely consented to what might have been done without his permission.

Finally, the court was right in allowing the jury to take four photographic exhibits into the jury room, even though the photographer had noted on the back of each picture the direction toward which it was taken and some indication of what it portrayed. Substantially the same information had already been given under oath when the pictures were received in evidence. Even if a minor detail or two had not been covered in the testimony, we find no possibility of prejudice.

Affirmed.